# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-0517

JOAN NAILOS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 17, 2021)                    Decided August 10, 2021)

*Christopher F. Attig*, of Little Rock, Arkansas, for the appellant.

*Mark D. Vichich*, with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, MEREDITH, and TOTH, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

MEREDITH, *Judge*: The appellant, Joan Nailos, surviving spouse of the veteran, William F. Nailos, appeals through counsel[1] an October 22, 2018, Board of Veterans' Appeals (Board) decision that denied an effective date prior to May 30, 2017, for the award of aid and attendance benefits. Record (R.) at 2-9.[2] This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to determine under what circumstances 38 C.F.R. § 3.402(c)(1) permits an effective date for the award of increased dependency and indemnity compensation (DIC) based on the need for aid and attendance earlier than the date of receipt of the claim for aid

---

[1] The appellant was initially self-represented and filed an informal brief. However, after the Court requested that the Veterans Consortium Pro Bono Program respond to whether representation could be secured, counsel entered an appearance on behalf of the appellant, and the Court permitted both parties to submit substitute briefing.

[2] References to the record are to the amended record of proceedings filed on February 23, 2021.

and attendance benefits.[3] For the following reasons, the Court concludes that § 3.402(c)(1) does not permit an effective date earlier than the date of the aid and attendance claim unless DIC is in effect for a period prior to the date of the DIC claim, i.e., there is a retroactive award of DIC. The Court will thus affirm the Board's decision.

## I. BACKGROUND

The veteran served on active duty in the U.S. Navy from November 1940 to January 1946. *See* R. at 924. He died in May 2002; his death certificate reflects that thrombo-embolism of the pulmonary arteries was the immediate cause of death, and coronary artery disease was a significant condition contributing to death. R. at 1343. The appellant applied for DIC, death pension, and accrued benefits by a surviving spouse the following month. R. at 2377-80. After a VA regional office (RO) denied the claim, she perfected an appeal to the Board and, ultimately, the Court affirmed an April 2004 Board decision denying entitlement to DIC. R. at 1869-94, 2003-05, 2007-31, 2104-06; *see* R. at 118.

Several years later, the appellant sought to reopen her claim, asserting that radiation treatment for the veteran's service-connected disabilities had contributed to the conditions that caused his death. R. at 1735-47. VA subsequently obtained a medical opinion reflecting that the veteran's heart disease was related to that radiation treatment. *See* R. at 925-26. Based on that evidence, the RO, in March 2015, found that the veteran's cause of death was related to military service and granted DIC, effective November 2009, the date of the claim to reopen. R. at 900-03, 923-27. The appellant disagreed with the assigned effective date and perfected an appeal to the Board. R. at 888-89; *see* R. at 841-65.

In April 2017, the Board denied the appellant's request for an earlier effective date for the award of DIC. R. at 591-601. The appellant again appealed to the Court. *See* R. at 117-20. In a September 2018 decision, the Court affirmed the Board's denial of an effective date prior to November 2009, determining in part that, because the Court previously had affirmed the Board's April 2004 denial of DIC, the appellant could not challenge that decision on the basis of clear and

---

[3] Pursuant to 38 U.S.C. § 1310, when a veteran dies from a service-connected disability, the surviving spouse may qualify for DIC, which currently is paid at a standard monthly rate of $1,357.56. *2021 VA DIC Rates for Spouses and Dependents*, U.S. DEP'T OF VETERANS AFFS., https://www.va.gov/disability/survivor-dic-rates/#surviving-spouse-rates-if-the- (last updated Mar. 2, 2021). That DIC payment may be increased by $336.32 per month, *id.*, if the survivor is "so . . . significantly disabled as to need or require the regular aid and attendance of another person," 38 U.S.C. § 1311(c).

2

unmistakable error. R. at 119. Further, the Court explained that the appellant had not "presented any argument to counter the Board's finding that '[t]here was no informal or formal claim, or written intent to file a claim for service connection for DIC dated after the April 19, 2004[,] Board denial and prior to the November 12, 2009[,] claim to reopen.'" *Id.*

In the meanwhile, in May 2017, the appellant submitted an intent to file a claim, as well as a completed aid and attendance examination report reflecting that her son helped her out of bed, cooked for her, managed her money, and assisted with her bathing, hygiene, and medication. R. at 583-84, 590. The appellant also submitted medical records revealing that she recently had been diagnosed with atypical ductal hyperplasia of the right breast. R. at 542; *see* R. at 540-49. In June 2017, the appellant's son submitted a Fiduciary Statement in Support of Appointment, together with a statement from the appellant indicating that she was appointing her son to act as her fiduciary. R. at 450-53.

A private examiner completed an aid and attendance examination in August 2017, reflecting that the appellant's son performs most of her activities of daily living. R. at 426-27. The same month, the RO granted aid and attendance benefits, effective May 30, 2017, the date the appellant submitted her intent to file a claim. R. at 423-25, 438-40. The appellant disagreed with the effective date for the award, asserting that her aid and attendance benefits should date back to June 2015, when she had an accident and became totally disabled. R. at 374-75. She attached emergency room and private medical records documenting a June 2015 work-related injury that resulted in a "[c]losed head injury without loss of consciousness." R. at 350; *see* R. at 350-73. Those records included a September 2015 private medical opinion that the appellant was "currently 100% totally disabled." R. at 355. The appellant subsequently perfected her appeal to the Board and asserted that she did not know about aid and attendance benefits prior to her May 2017 intent to file a claim. R. at 312-13; *see* R. at 314-40. She testified before the Board in April 2018 that she had been totally disabled since 2015. R. at 216; *see* R. at 210-29.

The Board issued the decision on appeal in October 2018, denying entitlement to an effective date prior to May 2017 for the award of aid and attendance benefits. R. at 2-9. Of note, the Board found that, because the appellant had been receiving DIC since 2009, "the provisions [in § 3.402(c)(1)] regarding retroactive aid and attendance based on an award of retroactive DIC are not applicable." R. at 5. This appeal followed.

## II. ANALYSIS

As noted above, this case turns on the proper interpretation of the regulation governing the effective date for an award of aid and attendance benefits for a surviving spouse, which provides:

> Awards of pension, compensation, or [DIC] to or for a surviving spouse will be effective as follows:
>
> . . . .
>
> (c) Aid and attendance and housebound benefits.
>
> (1) Date of receipt of claim or date entitlement arose[,] whichever is later. However, when an award of [DIC] or pension based on an original or reopened claim is effective for a period prior to date of receipt of the claim, any additional DIC or pension payable to the surviving spouse by reason of need for aid and attendance or housebound status shall also be awarded for any part of the award's retroactive period for which entitlement to the additional benefit is established.

38 C.F.R. § 3.402(c)(1) (2017).[4] There is no dispute that the first sentence of subsection (c)(1) is the general rule governing the effective date for an award of aid and attendance benefits. *See* Appellant's Brief (Br.) at 6, 12, 16; Secretary's Br. at 8-9, 11. The key dispute is whether the exception to that general rule, created by the "[h]owever" sentence, applies here. 38 C.F.R. § 3.402(c)(1).

### A. The Parties' Arguments

The appellant asserts that the Court should interpret 38 C.F.R. § 3.402(c)(1) as providing an exception to the general effective date rule when a claimant seeks aid and attendance benefits after having already been awarded DIC and that, under that exception, she is entitled to a retroactive award of aid and attendance benefits prior to the date of her claim for those benefits. Appellant's Br. at 6. First, she argues that the regulation is not genuinely ambiguous. *Id.* at 8-18. She contends that, although a "misplaced modifier" exists in the exception sentence—"date of receipt of the claim"—the text surrounding it, the rule of *contra proferentem*, and the pro-veteran

---

[4] Effective February 19, 2019, Congress amended portions of section 5110 and VA amended portions of 38 C.F.R. § 3.402 to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* Pub. L. No. 115-55, § 2(x), 131 Stat. at 1115 (providing the effective date of statutory amendments); VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 170 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date for regulatory amendments). However, the regulatory changes apply only to claims in which an initial decision is issued after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new statute or rule should apply here; thus, the Court's analysis is confined to the law in effect at the time of the August 2017 decision that assigned May 30, 2017, as the effective date for the award of aid and attendance benefits.

canon are all tools of construction that should guide the Court's interpretation of the regulation. *Id.* at 9; *see id.* at 9-11. Using those tools, she concludes that the phrases "'[d]ate of receipt of claim'" in the general rule and "'date of receipt of the claim'" in the exception sentence both refer to a claim for aid and attendance benefits. Appellant's Br. at 12-13 (quoting 38 C.F.R. § 3.402(c)(1)); *see* Appellant's Br. at 12-18. In other words, she reads the first portion of the "[h]owever" sentence as permitting retroactive aid and attendance benefits "when an award of [DIC] . . . based on an original or reopened claim is effective for a period prior to date of receipt of the [aid and attendance] claim." 38 C.F.R. § 3.402(c)(1) (modified to reflect the appellant's proffered interpretation); *see* Appellant's Br. at 7. If the regulation is read otherwise, she avers, it would govern an "impossible scenario" because DIC may be paid retroactively if the claim is received within 1 year of the veteran's death and a DIC claim could not be "reopened" during that 1-year period. Appellant's Br. at 14.

Next, the appellant contends that, even if the Court concludes that the regulation *is* genuinely ambiguous, deference is not owed to the Secretary's interpretation because any such interpretation is not the product of his fair and considered judgment. Appellant's Br. at 19-22 (first citing *Auer v. Robbins*, 519 U.S. 452 (1997); and then quoting *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)). Third, she avers that the Court should likewise not defer to the Agency's reading under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), because the Secretary's interpretation lacks persuasive force. Appellant's Br. at 22-24. She compares the Secretary's lack of guidance on how the regulation here should operate to *Young v. United Parcel Service, Inc.*, 575 U.S. 206 (2015), a case in which the Supreme Court did not afford *Skidmore* deference. Appellant's Br. at 23-24. Finally, she contends that she was harmed by the Board's finding that the exception within the regulation did not apply because, had the Board found otherwise, she would have been entitled to aid and attendance benefits as of the date in 2015 when her need arose or, alternatively, the Board would have made factual findings as to the proper date that she could have appealed to this Court. *Id.* at 24-25 (noting that she was "still pursuing an appeal of the grant of DIC in 2017 when she claimed aid and attendance"). She asks the Court to reverse the Board decision or, alternatively, to remand for the Board to address the Court's interpretation of the regulation. *Id.* at 25-26.

The Secretary agrees with the appellant that § 3.402(c)(1) is *not* genuinely ambiguous and the plain meaning of the regulation controls. Secretary's Br. at 5-8. Specifically, the Secretary agrees that "'[d]ate of receipt of claim'" from the general rule and "'date of receipt of [the] claim'"

from the exception sentence both refer to a claim for aid and attendance benefits. Secretary's Br. at 7-8 (quoting 38 C.F.R. § 3.402(c)(1)). However, the Secretary contends that the additional language in the exception sentence limits its scope and thus the Board's finding that the exception did *not* apply to the appellant's case was correct. Secretary's Br. at 9-23.

Specifically, the Secretary asserts that, when read as a whole, the regulation is meant "to carve out a narrow effective date exception for scenarios when aid and attendance entitlement arises during and in conjunction with the period in which a retroactive DIC award is granted." *Id.* at 9. The Secretary points to the use of "award" and "the award[]" in the exception sentence and asserts that both uses refer to an award of DIC,[5] and "that in order to receive an effective date of the date that entitlement to aid and attendance arises, any aid and attendance entitlement must have arisen and been awarded as part of the retroactive DIC award." *Id.* at 12. He avers that, because the appellant here had already been granted DIC, rather than having a pending claim for DIC when the issue of aid and attendance arose, the regulation does not apply. *Id.* at 13. He maintains that, if the regulation is instead read as permitting a retroactive award of aid and attendance benefits any time a claimant is in receipt of DIC before seeking aid and attendance benefits, the "vast majority" of awards would be governed by the exception, thus eviscerating the general rule. *Id*. at 14.

The Secretary also asserts that the explanation provided in 1980 when VA published the proposed regulation supports his position because VA specified that a retroactive award of aid and attendance benefits must be made "'in conjunction'" with a retroactive award of DIC, illustrating that the words "shall also" in the exception were intended to mean that the aid and attendance claim must arise in the context of a pending DIC claim. Secretary's Br. at 13-14 (quoting Veterans' Benefits; Effective Date of Awards, 45 Fed. Reg. 9297, 9297 (Feb. 12, 1980)). Otherwise, the Secretary avers that the appellant's remaining arguments are unpersuasive because it would not be impossible, as she contends, for a claim for DIC to be reopened within 1 year of a veteran's death; the appellant does not dispute that she did not file her aid and attendance claim until May 30, 2017; and the appellant cites no support for her argument that, because her appeal of the effective date for DIC was pending when she filed a claim for aid and attendance benefits, the exception applies.

---

[5] Under that reading, the second part of the "[h]owever" sentence would provide that "any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the [DIC] award's retroactive period." 38 C.F.R. § 3.402(c)(1) (modified to reflect the Secretary's proffered interpretation).

6

Secretary's Br. at 15-17. Finally, the Secretary argues that, if the Court finds the regulation ambiguous, his reading should be afforded *Auer* or, alternatively, *Skidmore* deference. *Id.* at 18-23.

In her reply brief, the appellant disputes the Secretary's argument that "award" and "the award[]" in the exception sentence refer to DIC; rather, she asserts that "award" refers to DIC but that "the award[]" refers to aid and attendance benefits.[6] Reply Br. at 4-7.[7] The appellant further contends that the Secretary, by citing to both his general rulemaking authority, 38 U.S.C. § 501, and a specific statutory scenario, 38 U.S.C. § 5110(d), as the authorizing statutes for § 3.402(c)(1), "signaled that the regulation applied not just to the specific scenario described in the specific statute, but to other situations not addressed in other statutes." Reply Br. at 8; *see id.* at 7-10. She avers that nothing in the Secretary's proposed regulation limited the exception to the specific scenario of section 5110(d) or the example provided in the Federal Register. *Id.* at 9-10. Finally, she avers that applying the exception in her case does not "eviscerate" the general rule, the exception "merely applies," Reply Br. at 10; *see id.* at 10-11; she also reiterates her argument that the Secretary's interpretation should not be afforded deference, *id.* at 11-14.

### B. Board Decision

In the October 2018 decision on appeal, the Board first acknowledged that it had previously denied entitlement to an effective date prior to November 2009 for the award of DIC and that the Court had affirmed that decision. R. at 4. Turning to the issue of an effective date prior to May 2017 for the award of aid and attendance benefits, the Board acknowledged the appellant's contention that she was entitled to a June 2015 effective date based on when she was injured and became disabled. *Id.* After explaining the rules governing the effective date for an award of aid and attendance benefits, the Board concluded that the exception found in § 3.402(c)(1) was inapplicable. R. at 5. The Board explained that "the [a]ppellant has been receiving DIC since November 2009; therefore, the provisions regarding retroactive aid and attendance based on an award of retroactive DIC are not applicable." *Id.* Applying the general effective date rule, the Board found that the appellant had filed an intent to file a claim on May 30, 2017, and that "[t]he

---

[6] Under that reading, "any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the [aid and attendance] award's retroactive period." 38 C.F.R. § 3.402(c)(1) (modified to reflect the appellant's proffered interpretation).

[7] The Court notes that the appellant's counsel clarified at oral argument that "the award[]" in § 3.402(c)(1) may also refer to the award of *DIC* for a retroactive period. Oral Argument (OA) at 25:00-25:56, http://www.uscourts.cavc.gov/oral_arguments_audio.php. The appellant's counsel asserted that "the result will still be the same." *Id*. at 25:16-25:42.

record does not contain any communication from the [a]ppellant that may be reasonably construed as a formal claim or an intent to file a claim for regular aid and attendance received by VA prior to this date." R. at 6. The Board then determined that, "[e]ven assuming she met the criteria for regular aid and attendance as early as June 2015, she did not submit a claim for benefits with VA at that time, and the date the claim was received by VA is the later of the two dates." R. at 7. Accordingly, the Board concluded that there was "no basis for awarding an earlier effective date." *Id.*

## C. Regulatory Interpretation

This case presents a question of regulatory interpretation, which is a legal question that the Court reviews de novo. *See Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003); *Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018) (per curiam). "Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). "[I]f the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see Kisor*, 139 S. Ct. at 2415 (instructing that deference is inappropriate when uncertainty does not exist; "[t]he regulation then just means what it means—and the court must give it effect"); *see also Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) ("The basic principles that apply to construing statutes apply equally to construing regulations."). If it is not clear, "the Court may look to other sources, including the history and purpose of the regulation." *Bailey v. Wilkie*, 33 Vet.App. 188, 194 (2021); *see Kisor*, 139 S. Ct. at 2415 (explaining that to exhaust the traditional tools of regulatory construction, "a court must 'carefully consider[]' the text, structure, history, and purpose of a regulation" (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984))). "[D]eference [to the Agency] can arise only if a regulation is genuinely ambiguous[,] . . . after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414.

### 1. Text and Structure of the Regulation

Following that legal framework, the Court turns first to the text of § 3.402(c)(1), which is repeated here for purposes of clarity:

> Date of receipt of claim or date entitlement arose[,] whichever is later. However, when an award of [DIC] or pension based on an original or reopened claim is effective for a period prior to date of receipt of the claim, any additional DIC or pension payable to the surviving spouse by reason of need for aid and attendance

or housebound status shall also be awarded for any part of the award's retroactive period for which entitlement to the additional benefit is established.

38 C.F.R. § 3.402(c)(1). As noted above, there is no dispute that the first sentence sets forth the general rule that, when VA awards to a surviving spouse benefits based on the need for aid and attendance, the effective date will be the date the need arose or the date of the claim seeking those benefits, whichever is later. The regulatory question before the Court is whether the exception created by the second sentence allows for benefits to be paid for periods prior to the date of the aid and attendance claim where, as here, the appellant was already in receipt of DIC when she sought aid and attendance benefits. *See* R. at 5.

The first portion of the "[h]owever" sentence—"when an award of [DIC] . . . based on an original or reopened claim is effective for a period prior to date of receipt of the claim"—sets forth the circumstances under which the exception is triggered, while the second portion of the sentence explains the scope of the exception—"any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the award's retroactive period for which entitlement to the additional benefit is established." 38 C.F.R. § 3.402(c)(1). Starting with the triggering event, the regulation refers to a "claim" and then to "the claim." *Id.* The first use explains what led to an award of DIC—"*an* original or reopened *claim*"—and thus is a reference to the *DIC* claim. *Id.* (emphasis added). When "*the* claim" then appears 11 words later, it reasonably is understood as referring to the "claim" that was just mentioned—the DIC claim. *Id.* (emphasis added); *see Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019).

This is particularly so, given that the intervening words continue to discuss only the DIC award. 38 C.F.R. § 3.402(c)(1) ("when an award of [DIC] . . . is effective for a period prior to . . ."); *see Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("[A] word is known by the company it keeps . . . ."). Additionally, inclusion before the second "claim" of a definite article—the—rather than an indefinite article, such as "a" or "an," indicates that the "'following noun . . . is definite or has been previously specified by context.'" *Preap*, 139 S. Ct. at 965 (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1294); *see id.* ("[T]he 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" (quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012))); THE CHICAGO MANUAL OF STYLE ¶ 5.71 (17th ed. 2017) ("A definite article points to a definite object that . . . is so well understood that it does not need description."). Because the words between "claim" and

"the claim" do not introduce another object to which "the claim" could refer, the straightforward reading is that it references the previously specified *DIC* claim. *See Preap*, 139 S. Ct. at 965.

Although the appellant instead looks to the phrase "[d]ate of receipt of claim" in the general rule to conclude that "the claim" in the exception refers to a claim *for aid and attendance*, *see* Appellant's Br. at 12-18;[8] *see also* Secretary's Br. at 7 (agreeing with the appellant's analysis as to the date of claim), because "the claim" appears later in the same clause of the same sentence that discusses a DIC claim, it should be read as referring back to that more immediate use of claim, rather than a farther removed use in a different sentence.[9] *Gardner*, 513 U.S. at 118 (noting that the "presumption that a given term is used to mean the same thing throughout a statute . . . [is] at its most vigorous when a term is repeated within a given sentence" (citation omitted)). With this understanding, the exception may apply "when an award of [DIC] . . . is effective for a period prior to date of receipt of the [DIC] claim," 38 C.F.R. § 3.402(c)(1)—in other words, if there is a retroactive award of DIC.[10]

The Court's reading is further buttressed by language in the second portion of the sentence. There, the regulation explains that, once the exception is triggered, aid and attendance "shall also be awarded for any part of *the award's* retroactive period for which entitlement to the additional benefit is established."[11] *Id.* (emphasis added). In discerning whether "award's" is referring to DIC

---

[8] The appellant's assertion in part relies on the incorrect notion that the phrases "[d]ate of receipt of claim" and "date of receipt of *the* claim," 38 C.F.R. § 3.402(c)(1) (emphasis added), are "identical . . . , both omitting the definite article 'the.'" Appellant's Br. at 13. Although the appellant also contends that "date of receipt of the claim" is a "misplaced modifier," she offers no explanation for why that characterization is appropriate or why words in a *previous* sentence would serve as the "nearest reasonable referent." Appellant's Br. at 13; *see* THE CHICAGO MANUAL OF STYLE ¶ 5.115.

[9] As noted above, the appellant further contends that, if "date of receipt of the claim" refers to DIC in the exception sentence, it would create an "impossible scenario" because DIC may be paid retroactively if the claim is received within 1 year of the veteran's death and a DIC claim could not be "reopened" during that 1-year period. Appellant's Br. at 14. However, the appellant does not address whether a reopened DIC claim could result in a retroactive award under other statutory or regulatory provisions or whether a reopened *pension* claim could lead to a retroactive award. *See, e.g.*, 38 U.S.C. § 5110(g), (i), (k), (*l*) (2017); 38 C.F.R. § 3.400(g), (v) (2017). The Court will not further address this argument. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006).

[10] As discussed below, the regulation defines the period prior to date of receipt of the DIC claim for which DIC is paid as the "retroactive period." 38 C.F.R. § 3.402(c)(1).

[11] As outlined above, the appellant initially maintained that this portion of the regulation provides that "any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the [aid and attendance] award's retroactive period," 38 C.F.R. § 3.402(c)(1) (modified to reflect the appellant's proffered

or aid and attendance, it is noteworthy that the first mention of an award in § 3.402(c)(1) is explicitly to DIC. *Id.* ("an award of [DIC] . . . based on an original or reopened claim"). The later use of "*the* award[]" thus should be read as referring back to the only award previously mentioned.[12] *Id.* (emphasis added); *see Preap*, 139 S. Ct. at 965. Further, the regulation specifies that additional benefits based on the need for aid and attendance "shall *also* be awarded for *any part* of the award's retroactive period." 38 C.F.R. § 3.402(c)(1) (emphasis added). By including the word "also" before awarded, the regulation signifies that more than one type of benefit is being discussed in that portion of the sentence. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 76 (2d ed. 1948) [hereinafter WEBSTER'S] (defining "also" as "[i]n addition"); *see also Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) ("The plain meaning of a term 'begins with its ordinary, contemporary, common meaning,'" and "[i]t is commonplace to consult dictionaries to ascertain a term's ordinary meaning." (citations omitted)), *aff'd*, 607 F.3d 802 (Fed. Cir. 2010). Indeed, it would be redundant for the regulation to direct that aid and attendance benefits be awarded in addition to aid and attendance benefits.[13] *See G. D. Searle & Co.*, 367 U.S. at 307-08 (refusing to "adopt a strained reading which renders one part [of the statute] a mere redundancy").

Similarly, the reference to "any part" of the retroactive period suggests that aid and attendance benefits could be awarded for *less than* the full retroactive period. *See* WEBSTER'S at 1781 (defining "part" as "[o]ne of the portions, equal or unequal, into which anything is divided, or regarded as divided; something less than a whole"). It would be nonsensical to read that language as explaining that aid and attendance benefits could be awarded for less than the entire period for which aid and attendance benefits have been awarded. Rather, the natural reading of

interpretation); the Secretary understands it to mean that "any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the [DIC] award's retroactive period," 38 C.F.R. § 3.402(c)(1) (modified to reflect the Secretary's proffered interpretation).

[12] Although the word "awarded" also appears in the regulation, it is used as a verb to describe what action must be taken *if* the regulatory exception applies and thus refers to payment of aid and attendance benefits. *See* 38 C.F.R. § 3.402(c)(1) ("aid and attendance . . . shall also be *awarded* for any part of the award's retroactive period" (emphasis added)). That future action could not also be "the award[]" that has already taken place. *Id.* Additionally, because VA in the same portion of that sentence used the phrases "additional DIC" and "additional benefit" to describe aid and attendance benefits, it is reasonable to conclude that VA would have similarly used "additional benefits' retroactive period" if that was the intent.

[13] Specifically, under the appellant's reading, "any additional DIC . . . payable . . . by reason of need for aid and attendance . . . shall also be awarded for any part of the [aid and attendance] award's retroactive period." 38 C.F.R. § 3.402(c)(1) (modified to reflect the appellant's proffered interpretation).

11

that phrase is that additional monthly benefits based on the need for aid and attendance may be paid for some or all of the period for which *DIC* is paid retroactively. *See Gardner*, 513 U.S. at 119 (relying on the "natural read[ing]" of the statute in question). Accordingly, the portion of the sentence laying out the scope of the exception is also dependent upon there first being a retroactive DIC award.[14]

Putting all this together, the meaning of the regulation is clear from its text and structure: "[W]hen an award of [DIC] . . . based on an original or reopened claim is effective for a period prior to date of receipt of the [DIC] claim, any additional DIC . . . payable to the surviving spouse by reason of need for aid and attendance . . . shall also be awarded for any part of the [DIC] award's retroactive period for which entitlement to the additional benefit is established." That means, if DIC has not been awarded for a period prior to the date of the DIC claim—and there is thus no retroactive period—the exception in (c)(1) simply does not apply.

### 2. History and Purpose

Recognizing that the parties have each offered an interpretation of § 3.402(c)(1) that differs from the meaning the Court finds evident from the text itself, the Court will proceed to examine whether the history and purpose of the regulation confirm our reading. Although the appellant at oral argument asked the Court to look only to the words of the regulation to answer the legal question before us, OA at 22:37-24:00, "the Court may look to other sources" to discern the meaning of a regulation. *Bailey*, 33 Vet.App. at 194 (citing *Kisor*, 139 S. Ct. at 2415). In that regard, when VA proposed to adopt this regulation in 1980, it included the following in the Federal Register:

> [VA] proposes to amend its regulations governing the effective date of an award of additional compensation, [DIC], or pension by reason of the need for aid and attendance . . . . The need for this action was brought to our attention by several of our field stations who pointed out that the regulations did not provide specific rules for the effective dates of these benefits. . . .
>
> . . . .
>
> Claims for . . . pension, compensation or DIC . . . may be effective for periods prior to the date the claim is filed with [VA]. (See, for example, § 3.400(b)(1) and (c)(2).) However, the regulations governing the effective dates of additional pension,

---

[14] In light of this conclusion, even if the parties are correct that "the claim" in the first portion of the exception sentence refers to the aid and attendance claim, there is still no basis for finding that aid and attendance could be paid prior to the date of the aid and attendance claim in the absence of a retroactive DIC award.

12

compensation or DIC by reason of need for aid and attendance . . . do not make clear that these benefits may also be awarded retroactively. . . .

Consequently, we are proposing to amend §§ 3.401(a), 3.402(c) and 3.404 to specifically provide that . . . the aid and attendance . . . benefit may also be awarded retroactively in conjunction with a retroactive award of pension, compensation or DIC. The following example illustrates the application of the proposed amendments.

A veteran files for pension on October 15, 1979. The evidence of record establishes the veteran's entitlement retroactive to March 15, 1979, the date the veteran became permanently and totally disabled. (38 C[.]F[.]R[. §] 3.400(b)(1)). The medical evidence also establishes that the veteran is in need of aid and attendance from March 15, 1979. This proposed amendment would clarify that the veteran is entitled to be paid at the aid and attendance rate from March 15, 1979. The current regulation can be interpreted to require payment to the veteran at the basic pension rate from March 15, 1979[,] to the date the claim was filed[,] October 15, 1979, and at the aid and attendance rate from October 15, 1979.

45 Fed. Reg. at 9297. As authority for this regulatory change, VA cited to 38 U.S.C. §§ 210(c) and 3010(d) (now sections 501 and 5110(d), respectively). 45 Fed. Reg. at 9297-98. At that time, section 210(c) authorized VA to "make all rules and regulations which are necessary or appropriate to carry out the law administered by [VA]." 38 U.S.C. § 210(c) (1976). Section 3010 set forth the general rule that an effective date would not be earlier than the date of the claim, as well as a number of exceptions to that rule. The exception specifically cited by VA provided that "[t]he effective date of an award of . . . [DIC] . . . where application is received within one year from the date of death, shall be the first day of the month in which the death occurred." 38 U.S.C. § 3010(d) (1976).

In several ways, this sheds light on whether the words in the regulation require a retroactive award of DIC in order for the exception in § 3.402(c)(1) to apply. Because VA cited to both its general authority to prescribe regulations and a DIC effective date provision that did *not* discuss aid and attendance benefits, that suggests VA was prescribing for aid and attendance benefits an effective date provision comparable to what was in effect for DIC. Although the appellant contends that these statutory citations signal that the Secretary meant for the regulation to apply in "other situations not addressed in other statutes," Reply Br. at 8, the explanation provided by VA does not support such a reading. Indeed, VA noted that claims for *DIC* "may be effective for periods prior to the date the claim is filed" and compared that to "the regulations governing the effective

dates of . . . aid and attendance [which] do not make clear that these benefits may also be awarded retroactively." 45 Fed. Reg. at 9297. VA then explained that, under the proposed regulation, aid and attendance benefits "may *also* be awarded retroactively in conjunction with a retroactive award of . . . DIC." *Id.* (emphasis added). All of this suggests that VA's purpose was to permit a retroactive award of DIC to be paid at the higher aid and attendance rate and thus bolsters our conclusion that (c)(1) applies only when DIC has been awarded retroactively.

Also of note, the appellant at oral argument did not dispute that, under her reading of § 3.402(c)(1), as long as DIC had already been awarded before a claimant seeks aid and attendance benefits, there would be no limit on the period of years prior to filing the aid and attendance claim for which VA would pay retroactive aid and attendance. OA at 25:55-27:30. Yet, VA in proposing (c)(1) cited to 38 C.F.R. §§ 3.400(b)(1) and (c)(2) as examples of provisions that allowed DIC and other benefits to be paid for periods prior to the date the claim is filed. Those provisions both permitted a retroactive award for no more than 1 year prior to the date of the claim. Similarly, the effective date exceptions contained in section 3010, including subsection 3010(d), capped at 1 year the period for which benefits could be paid prior to the date of the claim. *See* 38 U.S.C. § 3010(b)(1), (c), (d), (g) (1976). References to those 1-year retroactive periods, coupled with VA's purpose of mirroring for aid and attendance benefits what was already in effect for DIC, supports the conclusion that § 3.402(c)(1) did not create an indeterminate retroactive period for aid and attendance benefits.[15] Rather, § 3.402(c)(1) allows aid and attendance to be paid during the 1-year retroactive DIC period, and the appellant's reading to the contrary does not accord with the plain text, history, or purpose of that provision.

### 3. Meaning of § 3.402(c)(1)

In light of the above discussion, the Court holds that the text, structure, history, and purpose of § 3.402(c)(1) make clear that the exception outlined in the "[h]owever" sentence does not apply unless the claimant has received DIC for a period prior to the date of the DIC claim, i.e., a retroactive award of DIC. Indeed, both the event triggering consideration of the exception—an award of DIC prior to the date of the DIC claim—and the manner in which the exception is implemented—increasing a retroactive DIC award to include aid and attendance benefits—are

---

[15] Further, reading this provision as allowing an award for more than 1 year prior to the date of the aid and attendance claim would be inconsistent with the overall structure of VA's general effective date scheme. *See* 38 C.F.R. §§ 3.400-3.405 (2021).

tethered to an effective date for DIC that predates the DIC claim. Because, as discussed below, this conclusion is sufficient to resolve the current appeal, we need not address whether a DIC claim must be pending when a claimant seeks or becomes entitled to aid and attendance benefits. Secretary's Br. at 9-15 (maintaining that, for the (c)(1) exception to apply, aid and attendance must have arisen "'in conjunction with'" the DIC claim (quoting 45 Fed. Reg. at 9297)); *see* Appellant's Br. at 25 (suggesting that because her DIC claim was still pending when entitlement to aid and attendance benefits arose in 2015, she should be entitled to an effective date back to June 2015); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) ("Under [the prohibition against advisory opinions] doctrine, federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it.'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))). Further, because we do not find any genuine ambiguity in the regulation, the Court need not address the parties' competing arguments as to whether deference to the Secretary's interpretation is warranted.

### 4. Application

Here, the Board noted that the Court in 2018 affirmed an April 2017 Board decision that had denied entitlement to an effective date prior to November 2009 for the award of DIC. R. at 4; *see* R. at 119. The Court takes judicial notice that, in the 2018 decision, the Court found that the Board's 2004 denial of DIC was final because the Court had affirmed that decision, and that the Board's April 2017 denial of an effective date for DIC earlier than the November 2009 claim to reopen was not in error. R. at 119; *see Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021); *Monzingo v. Shinseki*, 26 Vet.App. 97, 101-03 (2012) (per curiam) ("The Court may take judicial notice of facts of universal notoriety that are not subject to reasonable dispute."). In seeking an earlier effective date for aid and attendance benefits, the appellant does not contend or provide factual support for concluding that her award of DIC was effective for a period prior to the date of the 2009 claim to reopen.[16] Because she thus has not alleged or demonstrated that there was a

---

[16] Although the appellant through counsel asserted at oral argument that benefits paid for the period between her 2009 DIC claim and the 2015 RO decision awarding DIC benefits could trigger the exception, OA at 25:55-26:30, she did not raise that argument in her briefing and, in any event, that does not amount to an assertion that DIC was effective *prior to the date of the DIC claim*, which we have held is a necessary trigger for the (c)(1) exception.

retroactive DIC award, she has not shown error in the Board's conclusion that the (c)(1) exception was not applicable. *See* R. at 5 ("[T]herefore, the provisions regarding retroactive aid and attendance based on an award of retroactive DIC are not applicable."). For that reason, she also has not demonstrated that any insufficiency in the Board's explanation is prejudicial. [17] *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). Although the Court is sympathetic to the appellant's circumstances, because the plain meaning of the regulation does not support her contentions and she does not otherwise challenge the Board decision, there is simply no basis for finding that reversal or remand is warranted.

### III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's October 22, 2018, decision denying an effective date prior to May 30, 2017, for the award of aid and attendance benefits is AFFIRMED.

GREENBERG, *Judge*, dissenting:

### I.

Again, I must respectfully dissent. "Dissents speak to a future age. It's not simply to say, 'My colleagues are wrong and I would do it this way.' But the greatest dissents do become court opinions and gradually over time their views become the dominant view. So that's the dissenter's hope: that they are writing not for today, but for tomorrow." *Ruth Bader Ginsburg*, May 2, 2002. "Dissent for its own sake has no value . . . . However, where significant and deeply held disagreement exists, members of the Court have a responsibility to articulate it. . . . Unanimity is not in and of itself a judicial virtue. . . . Judges have no power to *declare* law. Courts *derive* legal principles and have a duty to explain *why* and *how* a given rule has come to be. . . . [Judges] are

---

[17] Additionally, although the appellant seeks a remand for the Board to consider the Court's "final interpretation of 38 C.F.R. § 3.402(c)(1)," Appellant's Br. at 26, she has not identified any outstanding factual findings that would be necessary to decide whether the exception applies to her case.

forced by a dissent to reconsider the fundamental questions and rethink the result . . . . In my judgment . . . the unique interpretive role of [our Court] with respect to the Constitution [and our authority] demands some flexibility with respect to the call of stare decisis. . . . [We should not be] captive to the anachronistic view of long-gone generations. . . . The right to dissent is one of the great and cherished freedoms by reasons of the excellent accident of our American births." William J. Brennan Jr., *In Defense of Dissents*, 37 Hastings L.J. 427, 427-35 (1985) (emphasis in original). Accordingly, I feel very much at home with this dissent. [18]

## II.

On the morning of December 7, 1941, William F. Nailos, was aboard the U.S.S. *Arizona* while the U.S. Navy was attacked by the Empire of Japan. *See* R. at 2040. 1,177 officers and crewmen lost their lives when the battleship went down.[19] There are no words that could possibly capture the horror Mr. Nailos must have experienced as armor-piercing bombs, within a matter of minutes, transformed his 35,000-ton home into a fire-ravaged mass grave filled with his friends and fellow sailors. Mr. Nailos survived and *then* fought for his country in World War II.

## III.

Eighty years later, his widow, who worked continuously until injured at work, is in need. She is fighting VA for aid and attendance benefits to which she is entitled. No one disputes that. Congress could not have intended the result the majority reaches today. *See* 38 U.S.C. § 1311(c). The life of a widow in need of aid and attendance is already wrought with challenges. The widow is often in a particularly difficult situation where she is trying to navigate on her own through the complicated VA benefits system to obtain money necessary to live. Requiring a widow to reapply

---

[18] *See e.g. Taylor v. Shinseki* (*Taylor II*), No. 11-0254, 2013 WL 3283487 (Vet. App. June 28, 2013); *see also Taylor v. Wilkie* (Taylor IV), 31 Vet. App. 147 (2019); *see Taylor v. McDonough*, No. 2019-2211, 2021 WL 2672307 (Fed. Cir. June 30, 2021), *rev'g and remanding Taylor v. Wilke*, 31 Vet.App. 147 (2019) (Greenberg, J., dissenting); *Taylor v. McDonough*, ___ F.4th ___, No. 2019-2211, 2021 WL 3087540 (Fed. Cir. July 22 2021) (per curiam order), *vacating and granting rehearing en banc*, ____ F.4th ___, 2021 WL 2672307, *rev'g and remanding Taylor v. Wilke*, 31 Vet.App. 147 (2019) (Greenberg, J., *dissenting*).

[19] The U.S.S. *Arizona* sustained eight bomb hits; one hit on the forecastle glancing off the face plate of Turret II, penetrating the deck to explode in the black powder magazine, which in turn set off adjacent smokeless powder magazines. A cataclysmic explosion ripped through the forward part of the ship, touching off fierce fires that burned for two days; debris showered down on Ford Island in the vicinity. (last visited July 28, 2021). Again, Mr. Nailos was aboard the U.S.S. *Arizona* when it was blown up.

for aid and attendance benefits to which she is entitled puts an unnecessary burden on a claimant who needs the regular assistance of another, merely to survive.

## IV.

It is our Court's duty to interpret the regulation as applied.[20] The holding here today leaves the widow of a Pearl Harbor veteran on her own for aid and attendance expenses. Claimants are presumed to be seeking the maximum benefits, *see AB v. Brown*, 6 Vet. App. 35 (1993), but that presumption is overcome by the widow merely checking the wrong box on a DIC application. "The VA disability compensation system is not a trap for the unwary," *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009), yet today the majority has allowed the widow of a Pearl Harbor survivor to be ensnared by VA's maze-creating forms. For an examination of recent judicial review of regulatory matters involving veterans see *Military-Veterans Advocacy v. Secretary of Veteran Affairs*, ___ F.4d. ____, 2019-1600, _____ (Fed. Circ. July 30, 2021) .

## V.

Courts are always open to provide remedies to right wrongs. It does not matter, nor should it matter whether a particular legal compartment or pigeon hole is available. *See e.g. Driscoll vs Burlington Bridge Co.*, 8 N.J. 433, 486-87 (1952) (Vanderbilt, C.J., "[w]here rescission is prayed for and is warranted by the facts, but cannot be decreed because of the intervening equities of innocent third parties . . . , under general principles of equity the court may require the wrongdoers to account for their profits so that as nearly as may be the parties will be protected and equity done." *See also Johnson v. Christ Hospital*, 45 N.J. 108, 113, 211 A.2d 376, 379 (1965) (per curiam) *aff'd for reasons stated below*, *Johnson v. Christ Hospital*, 84 N.J. Super. 541, 202 A.2d 874 (1964) (Matthews, Ch. Div.). I will continue to dissent from decisions which unfairly burden veterans or their beneficiaries. "La vérité est en marche; rien ne peut plus l'arrêter" (The truth is on the march and nothing can stop it). *Emile Zola, January 13, 1898.*

---

[20] If you must dive into the history and purpose of a regulation to determine its meaning, you are implicitly acknowledging that the regulation is ambiguous on its face. *Conroy v. Aniskoff*, 507 U.S. 511, 518-19 (1993) (Scalia, J., *concurring*); s*ee also Boone v. Lightner*, 319 U.S. 561, 576-79 (1943) (Black, J. *dissenting*).